| | | |
|---|---|---|
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:23-CV-00050-DCLC-DCP |
| v. | ) | |
| | ) | |
| CHARLES SAMPLES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Charles Samples purchased property on the Norris Reservoir. Portions of his property were subject to the TVA Act, 16 U.S.C. § 831y-1, which required Samples to obtain a permit from TVA before he began any construction on his new lots. Although Samples applied for a permit, TVA had not approved his permit before Samples began construction. And, while he claimed he had verbal approval from two TVA employees, that is not the same as obtaining permit approval as required by the TVA Act. Thus, TVA's motion for Summary Judgment and for Permanent Injunctive Relief [Doc. 35] is **GRANTED**. TVA's motion for a Preliminary Injunction [Doc. 7] is **DENIED AS MOOT**.

**I. BACKGROUND**

TVA is a federal corporate agency responsible for water control projects in the Tennessee Valley. As part of its mission, it constructed the Norris Dam and Reservoir [*See* Doc. 51, ¶ 1]. This project was integral in TVA's plan to control flooding and manage river flood stages in the Tennessee Valley. [*Id.*]. Years ago, TVA acquired land "for purposes of managing the Norris Reservoir." [*Id.* at ¶ 2]. It sold a subset of this tract but retained fee ownership in all land lying

1

below the 1020-foot contour elevation [*Id.*, ¶ 3]. It also possessed an easement on land below the 1044-foot contour elevation requiring landowners to obtain TVA permit approval pursuant to § 26a of the TVA Act and regulations for any new construction projects. [*Id.* at ¶ 6]. Samples claims that in mid-December 2021, TVA employee David Harrell ("Harrell") and Anne Patrick ("Patrick") verbally advised him he had TVA permission to begin construction [Doc. 51, ¶¶ 17–19; 18-1, ¶ 11]. Despite having "verbal" approval, on January 4, 2022, Samples applied for a permit for construction on two lots he owned [Doc. 51, ¶ 8]. In his application, he submitted plans to build a shoreline riprap; a concrete launching ramp; a floating covered boat slip to include five slips; an access walkway; utilities; and boat lifts [*Id.*, ¶ 9].

Prior to TVA approving Samples' permit, Samples began construction. Between January 2022 and January 2023, he built a floating cabin, two five-slip boat docks, a concrete boat ramp, and a wood-framed building on his property [*Id.*, ¶ 11]. His wood-framed building and concrete boat ramp extend below the 1044-foot contour elevation, requiring TVA approval [*Id.*, ¶ 12]. Samples' concrete boat ramp extends onto Government property and his two five-slip boat docks, his floating cabin, and access walkway are moored below the 1020-foot contour elevation. [*Id.*, ¶¶ 13–14]. TVA also claims that since the filing of this lawsuit, Samples has placed four additional platforms in the water and attached them to the boat slips [Doc. 37, pg. 13 n. 8; *see* Doc. 52, pgs. 69–71].

Soon after Samples began construction, the TVA sent him a letter informing him that his construction violated TVA's § 26a regulations, directing him to "immediately cease and desist from any and all unauthorized construction on TVA property" and his failure to comply "could result in the denial of [his] pending Section 26a permit applications." [Doc. 1-6, pg. 35]. Samples acknowledges that he received TVA's letter [Doc. 53-1, pgs. 2–3]. Notwithstanding TVA's

2

warning, Samples continued building [Doc. 51, ¶ 11; Doc. 1-6, ¶¶ 14–15, 19].

On January 27, 2023, TVA denied Samples' § 26a permit application. [Doc. 51, ¶ 15]. He appealed, which TVA denied on June 30, 2023 [*Id.* at ¶ 16]. On February 6, 2023, TVA sued Samples seeking injunctive relief requiring Samples to remove the unauthorized structures he had built without compliance with § 26a of the TVA Act [Doc. 1, ¶¶ 54, 67, 75, 83]. The present motions followed [Docs. 7, 35].

## II. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court must generally view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Id*.

## III. ANALYSIS

TVA asserts three bases for the Court to enter an injunction: (1) that Samples committed a trespass on government property by building the docks, floating cabin, and a portion of the boat ramp below the 1020-foot contour line [Doc. 37, pg. 9; *see* Doc. 51, ¶¶ 13–14]; (2) that Samples' wood-framed building and concrete boat ramp interfere with TVA's easement rights below the

3

1044-foot contour line [Doc. 37, pgs. 10–11; *see* Doc. 51, ¶¶ 12–13]; and (3) that all the structures violate § 26a of the TVA Act because they are "obstructions" under the statute and Samples failed to obtain TVA's approval to build them [Doc. 37, pgs. 12–13]. The Court addresses these arguments in turn.

    A.    Trespass

TVA argues that by placing the boat docks, the floating cabin, and building a portion of the concrete ramp below the 1020-foot contour, Samples trespassed on government property [Doc. 37, pg. 9]. Under Tennessee law, a trespass claim consists of: "(1) an intentional entry or holdover (2) by the defendant or a thing; (3) without consent or legal right." *Weatherly v. Eastman Chem. Co.*, No. E202201374COAR3CV, 2023 WL 5013823, at *10 (Tenn. Ct. App. Aug. 7, 2023) (citation omitted). Here, there is no dispute that Samples intentionally built and moored his property below the 1020-foot contour elevation [*See* Doc. 37, pg. 9; Doc. 50, pg. 7]. The issue is the third element, that of consent.

Samples claims TVA employees gave him permission to build [Doc. 50, pg. 7]. But TVA points out the law does not allow that [Doc. 53, pg. 9]. 16 U.S.C. § 831y-1 specifically requires Board approval of any plans and that the approval must be obtained prior to commencement of the construction project. To obtain approval, TVA has established the § 26a permitting process. *See* 18 C.F.R. § 1304.1, *et seq.* In any event, Samples' reliance on any verbal approval could not have been reasonable because TVA notified Samples in writing numerous times *after he began construction* that his construction project was unauthorized and he needed to proceed through the permitting process [Doc. 1-6, ¶¶ 14, 16, 21; *id.* pgs. 35–36, 44–45, 48–49]. There is no genuine dispute of material fact on this issue. TVA never approved Samples' permit, and accordingly, his construction was not authorized under the law. Summary judgment is due to be granted on TVA's

4

trespass claim [Doc. 1, ¶¶ 76–83].

B.     Interference with TVA's Flowage Easements

TVA also asserts Samples' wood-framed building and a portion of the concrete ramp interfere with its flowage easement [Doc. 37, pg. 7]. "To prevail in an action for unreasonable interference with the use of an easement, the owner of the easement must prove the following elements: (1) the existence of the easement, (2) unreasonable interference with a legitimate use or purpose of the easement; and (3) actual damage to the easement holder's use." *Nashboro Golf Course, LLC v. Townhomes of Nashboro Vill., L.P.*, No. M201700226COAR3CV, 2018 WL 4382073, at *3 (Tenn. Ct. App. Sept. 14, 2018) (citations omitted).

There is no dispute in this case that TVA has a "flowage easement" allowing it to flood the land below the 1044-foot contour and remove structures built below that line [Doc. 51, ¶¶ 4–6]. Samples argues his structures neither unreasonably interfere with TVA's right to flood the land nor cause any actual damage [Doc. 50, pg. 8]. But in addressing this issue when TVA is a party, the term "unreasonably" has been interpreted quite broadly. In *U.S. ex rel. Tennessee Val. Auth. v. Hughes*, 408 F.2d 619 (6th Cir. 1969), TVA had obtained a flowage easement from a Tennessee landowner. The flowage easement authorized TVA to flood the property, remove obstructions, and require the removal of unauthorized structures. *Hughes*, 408 F.2d at 620. The landowners then placed two house trailers within the area of TVA's flowage easement. *Id.* The Sixth Circuit acknowledged the easement holder and landowner could not "unreasonably interfere" with one another's use of the land. *Id.* at 621. But in reversing the denial of an injunction to remove the trailers, the Sixth Circuit held that:

> It is no excuse to say that this particular obstruction is minor in nature. If [the landowner] can continue to maintain this obstruction, there is no reason why others similarly situated cannot do likewise; the ultimate effect being a limitation on the usefulness of the easement.

5

*Id.* at 621. The Sixth Circuit further noted that TVA's flood control measures could not achieve their aims of safeguarding persons and property from harmful flooding if private dwellings stood in the way and that submerged structures could pose navigational hazards. *Id.* The same concerns apply to Samples' wood-framed building and boat ramp, which he built on a TVA flowage easement without approval. Samples' construction frustrates the easement's purpose of allowing the TVA to protect private property from flood damage. Even if Samples' construction is "minor in nature," TVA still has the authority to have it removed. *Id.* Summary judgment is due to be granted on TVA's flowage easement claim [Doc. 1, ¶¶ 68–75].

      **C.**    **Violation of the TVA Act and Regulations**

TVA argues that Samples violated § 26a by failing to obtain proper authorization before installing the "Unauthorized Structures"——*i.e.*, the floating cabin, boat docks, boat ramp, and wood-framed building; as well as four additional platforms and an access walkway. Section 26a provides: "[N]o . . . obstruction . . . shall be constructed, and thereafter operated or maintained across, along, or in the [Tennessee] river or any of its tributaries until plans for such construction, operation, and maintenance shall have been submitted to and approved by the [TVA] Board . . . ." 16 U.S.C. § 831y-1. "[C]ommencement of construction . . . without such approval is prohibited." *Id.* "Section 26a requires a permit before anyone may construct any 'obstruction . . . affecting navigation.'" *Tennessee Valley Auth. v. Jones*, 199 F. Supp. 3d 1198, 1203 (E.D. Tenn. 2016) (quoting 16 U.S.C. § 831-y), *aff'd*, 692 F. App'x 224 (6th Cir. 2017). TVA's approval is a "condition precedent to the construction of any structures . . . ." *Gast v. Tennessee Valley Auth.*, No. 4:10-CV-45, 2011 WL 864390, at *9 (E.D. Tenn. Mar. 10, 2011).

Samples concedes the disputed structures at his property are "obstructions" along the Tennessee River [Doc. 50, pg. 10]. Thus, § 26a prohibited their construction unless TVA approved

6

them. It is undisputed that Samples failed to obtain a § 26a permit before beginning construction in violation of the permitting process [*See* Doc. 51, ¶¶ 11, 15–16; Doc. 1-6, ¶¶ 13–19].

Samples again argues he had the necessary approval because he had "express and/or implied authority" based on TVA employees' "go ahead" [Doc. 50, pg. 10; *see* Doc. 18-1, ¶¶ 8–9, 11, 15–18]. But as already discussed, even assuming his recollection is accurate, his reliance on those employees would have been unreasonable especially in light of all the letters he received from TVA directing him to stop construction. And in any event, he failed to follow the permitting process TVA established to obtain approval. Because Samples lacked TVA's approval to build the structures, summary judgment is due to be granted on TVA's claims that Samples' construction violated § 26a and associated regulations [Doc. 1, ¶¶ 47–67].[1]

### D. Injunctive Relief

TVA's motion seeks an injunction: (1) requiring Samples to remove the Unauthorized Structures; (2) providing that if Samples does not remove any portion of the Unauthorized Structures, TVA shall have the right to demolish them and Samples shall be liable for demolition costs; and (3) providing that if Samples does not remove the Unauthorized Structures, then any personal or real property attached to or comprising the Unauthorized Structures located on government property shall become TVA's property, and TVA shall not be liable to Samples for the value of or damage to the property [Doc. 35, pg. 2].[2]

---

[1] Samples also claims that in addition to showing his construction was unauthorized, TVA must additionally show that he failed to even *seek* approval [Doc. 50, pg. 9]. He argues he did seek approval by applying for a § 26a permit, so TVA's claim under § 26a fails [Doc. 50, pg. 10]. This argument presumes permission will be granted, as in "Ask and it will be given to you…." Matthew 7:7. But following that reasoning removes the approval process. If all a landowner had to do was *ask* for permission, not *receive* permission, to begin construction, TVA would have no control of construction projects along the Tennessee River.

[2] TVA also includes within the "Unauthorized Structures" the additional platforms Samples

7

Under § 26a, a district court may enter an injunction requiring the "removal or discontinuation" of "construction, commencement of construction, operation, or maintenance of any structures or parts thereof in violation of the provisions of this section." 16 U.S.C. § 831y-1. However, "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008).

To obtain injunctive relief, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted). The Court examines the factors in turn.

First, TVA argues it suffers irreparable harm from Samples' trespassing on its property and interfering with its flowage easement [Doc. 37, pg. 15]. To be sure, Samples has committed a trespass on TVA's property by building structures that intrude onto government property. Courts have found that where a trespass against the United States occurs, an injunction is the appropriate remedy. *See, e.g.*, *Tennessee Valley Auth. v. Walcott*, 611 F. Supp. 3d 1328, 1336 (N.D. Ala. 2020) ("Injunctive relief is . . . appropriate in cases of trespass."); *United States v. Perry*, 2018 WL 11356695, at *5 (S.D. Ohio Nov. 7, 2018) ("When the United States demonstrates that a trespass has occurred, it is generally entitled to injunctive relief.") (citation omitted).

More broadly, TVA argues Samples' noncompliance with the § 26a permitting program also causes irreparable harm because it threatens TVA's regulatory authority [Doc. 37, pgs. 15–

---

placed in the water since the filing of this lawsuit and the access walkway Samples built without a permit [Doc. 37, pgs. 3, 13 n. 8; *see* Doc. 52, pgs. 69–71]. For clarity purposes, the Court will include all these items when referring to "Unauthorized Structures."

16]. TVA is correct here as well. Disregarding TVA's statutory authority constitutes irreparable harm. *Jones*, 199 F. Supp. 3d at 1205 ("[A]llowing parties like Defendants to disregard TVA's statutory authority under 26a would result in irreparable harm.").

Samples asserts his actions do not undermine TVA's authority because he applied for a permit then proceeded with construction based on the "go-ahead" he claims he received from TVA employees [Doc. 50, pg. 13]. But Samples acknowledged that he had to "receive permission to construct and/or maintain structures through the Section 26a permitting process" and he did not [*See* Doc. 18-1, Declaration of Samples, ¶ 7]. This is simply ignoring TVA's authority to oversee approval of construction projects that implicate its statutory interests.

Turning to the second factor, TVA argues remedies at law would fail to remedy the harms to its property interests and regulatory scheme [Doc. 37, pg. 16]. The Court agrees. Legal remedies would fail to address Samples' ongoing trespass and interference with TVA's flowage easement. *See Long*, 2013 WL 387933, at *3 (explaining legal remedies would be inadequate because "the continued existence of [the defendant's] current structure on the reservoir would not only undermine TVA's interest in uniform compliance[,] it would also constitute a continuous trespass onto Government property."). "Only prompt removal of the illegal structure[s] would suffice . . . , as it is the only remedy that would effectively deter future violations of the regulations at issue." *Id.*

As to the third factor, TVA argues the equities favor TVA [Doc. 37, pgs. 17–18]. Samples argues he stands to lose the investment he made in building the structures and that removing them will be costly [Doc. 50, pg. 14]. But Samples could have avoided these losses had he complied with the law or heeded TVA's warning that his construction projects were not authorized. Instead, he proceeded without obtaining the necessary permit. In doing so, he proceeded at his own peril.

9

*See Tennessee Valley Auth. v. Jones*, 692 F. App'x 224, 227 (6th Cir. 2017) (explaining that when the defendant "chose to build the structures without a permit at all[,] . . . any hardship . . . was foreseeable rather than undue.").

On the fourth factor, TVA argues the public interest supports an injunction [Doc. 37, pg. 18]. Samples contends TVA's requested injunction is not in the public interest because he claims TVA is "selective[ly] enforc[ing]" the statute by failing to act on "numerous" other purported § 26a violations [Doc. 50, pg. 15; *see* Doc. 18-1, ¶¶ 26–28]. But TVA has significant discretion to determine which enforcement decisions will best serve the public interest. Samples provides no evidence TVA has abused that discretion in this case. Moreover, "[t]he public interest is served by demonstrating that flagrant disregard for TVA's regulatory authority will not be tolerated and by permitting TVA, a public agency tasked with protecting the public interest, to determine how best to use the land." *Jones*, 199 F. Supp. 3d at 1206. Here, TVA is better positioned than Samples to determine which uses of government land and flowage easements will best serve the public interest.

Samples further asserts that members of the public are using the structures at his property for their benefit and that dismantling them would cause pollution [Doc. 50, pgs. 15–16]. That might be true, but TVA is the party that has sought the removal of the Unauthorized Structures. It is TVA's judgment that Samples should never have built those structures in the first instance. And that judgment is not subject to judicial review. *TVA v. Jones*, No. 1:14-cv-356, 2016 WL 7799315, at *5 (E.D. Tenn. Mar. 22, 2016) (describing TVA's discretion as "virtually limitless" and TVA's decisions regarding land use "are not amenable to judicial review under the APA."). It is TVA's judgment that on balance between removal and leaving those structures in place, removal is in the public interest. In this case, the Court agrees with TVA. In sum, because the factors weigh in

TVA's favor, injunctive relief is appropriate.

## IV. CONCLUSION

For the reasons stated herein, TVA's Motion for Summary Judgment and for Permanent Injunctive Relief [Doc. 35] is **GRANTED**. Accordingly, the Court **ORDERS** as follows:

1. Within **thirty days** after the entry of judgment, Defendant Charles Samples shall remove the "Unauthorized Structures" which are the subject of TVA's Motion from below the 1044-foot contour line;

2. **Provided Defendant Samples has not removed the "Unauthorized Structures" within the time allotted in ¶ one,** TVA shall have the right to demolish below the 1044-foot contour line any remaining portions of the "Unauthorized Structures," as well as any personal property attached thereto. Defendant Samples shall be liable to TVA for the reasonable costs of the demolition in an amount to be determined at a hearing to be set by the Court upon completion of the demolition project; and

3. If TVA is forced to remove the "Unauthorized Structures" on its own in the manner described above, any personal or real property attached to or comprising the "Unauthorized Structures" located below the 1044-foot contour line shall become the property of TVA, and TVA will not be liable to Defendant Samples for the value of, or damage to, such property.

TVA's Motion for Preliminary Injunction [Doc. 7] is **DENIED AS MOOT**. A separate judgment shall enter.

**SO ORDERED**:

s/ Clifton L. Corker<br>
United States District Judge